## LE GRAND *v.* UNITED STATES.

*(Circuit Court, E. D. Texas. July 6, 1882.)*

CONSTITUTIONAL LAW—AMENDMENTS INHIBITING STATE LEGISLATION.

Where a state has been guilty of no violation of the provisions of the thirteenth, fourteenth, and fifteenth amendments to the constitution of the United States, no power is conferred on congress to punish private individuals who, acting without any authority from the state, and it may be in defiance of law, invade the rights of the citizen which are protected by such amendments. So, where an act of congress is directed exclusively against the action of individuals, and not of the states, the law is broader than the amendments by which it is attempted to be justified, and is without constitutional warrant.

Error to the District Court for the Eastern District of Texas.

On October 11, 1881, the United States attorney for the eastern district of Texas filed an information against Israel Le Grand, the plaintiff in error, William Ridley, and William Laney, in which it was charged that on May 31, 1881, in the county of Camp, and within the eastern district of Texas, the plaintiff in error and the said Ridley and Laney did conspire together and go in disguise upon the premises of one Dennis Bolton, a free male citizen of the United States, and of the state of Texas, who was of the African race and descent, and of the black complexion, for the purpose of depriving him of the equal protection of the laws of the United States and of the state of Texas on account of his said race and color, and especially for the purpose of depriving him, the said Bolton, on account of his said race and color, of his right and privilege to give evidence in a certain criminal prosecution pending before one J. T. Covington, a justice of the peace of said county of Camp, in the name of the state of Texas, against the said William Ridley and one Robert Carr, and to prevent the said justice of the peace from giving and securing to said Dennis Bolton the equal protection of the laws, to-wit, the right to testify in behalf of the state of Texas in said criminal prosecution, and to prevent the said justice from securing to him, the said Bolton, immunity from personal danger from and at the hands of said Ridley, Le Grand, and Laney; and that said defendants, for the purpose of effecting said conspiracy, having gone upon the premises of said Bolton, did upon said premises assault and shoot and inflict great bodily harm upon the person of the said Bolton. Only one of the defendants named in the information—namely, the plaintiff in error—was arrested by the marshal. He was arraigned, and pleaded not

v.12,no.7—37

guilty, and was put upon trial. The jury returned a verdict of guilty, and he was adjudged by the court to pay a fine of $500, and to be imprisoned, at hard labor, for the term of five years in the penitentiary at Chester, in the state of Illinois. This writ of error is prosecuted to reverse that judgment.

*Charles A. Culberson*, for plaintiff in error.

*Edward Guthridge*, U. S. Atty., for the United States.

WOODS, Justice. Many points have been presented by counsel for the plaintiff in error, in which a reversal of the judgment is demanded. Some of them are based upon alleged errors of the court in its charges to the jury. As the charges complained of are not incorporated in any bill of exceptions, but are inserted by the clerk without any authentication by the judge, they are not properly presented, and cannot be considered. There are, however, other grounds properly presented by motion in arrest of judgment, upon which a reversal of the judgment is asked. I am of opinion that one of these grounds is well taken; and as it is not only fatal to the judgment in this case, but also to any prosecution in a United States court for the acts charged in the information, it will be alone considered. The ground referred to was in substance as follows: Because the act of congress upon which the prosecution rests was passed without any constitutional warrant.

The law, the violation of which is charged in the information, is that part of section 2 of the act of April 20, 1871, (17 St. 13-14,) which now constitutes section 5519 of the Revised Statutes of the United States. It declares:

"If two or more persons in any state or territory conspire or go in disguise, on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any state or territory from giving or securing to all persons within such state or territory the equal protection of the laws, each of said persons shall be punished by a fine of not less than $500 nor more than $5,000, or by imprisonment with or without hard labor not less than six months nor more than six years, or by both said fine and imprisonment."

The plaintiff in error insists that the constitution of the United States nowhere confers on congress the power to pass such an act, and the question for solution, therefore, is under what clause of the constitution, if any, can this legislation be sustained.

The fifteenth amendment can have no application. That amendment relates to the right of citizens of the United States to vote. It

does not confer the right of suffrage on any one. It merely invests citizens of the United States with the constitutional right of exemption from discrimination in the exercise of the elective franchise on account of race, color, or previous condition of servitude. *U. S.* v. *Reese,* 92 U. S. 214; *U. S.* v. *Cruikshank,* 92 U. S. 542; S. C. 1 Woods, 322.

Section 5519 of the United States Revised Statutes has no reference to this right. The right guarantied by the fifteenth amendment is protected by sections 4 and 5 of the act of May 31, 1870, (16 St. 141;) sections 5506, 5507, Rev. St.

It requires no argument to show that a law which, according to the theory of the prosecution, and which in fact is intended to protect among other things the right of the citizen to give evidence in the courts, cannot be based on an article of the constitution which simply protects the right of the citizen to the elective franchise against discrimination on account of his race, color, or previous condition of slavery. Nor can authority for this legislation under review be found in the fourteenth amendment to the constitution. The only part of that amendment which can have any bearing upon the question in hand is the first and fifth sections. The first section declares:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the states wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The fifth section declares: "The congress shall have power to enforce by appropriate legislation the provisions of this article."

It is perfectly clear, from the language of the first section above quoted, that when a state has been guilty of no violation of its provisions the section does not confer on congress the power to punish private individuals who, acting without any authority from the state, and it may be in defiance of its laws, invade those rights of the citizen which are protected by the amendment.

The scope of the two sections of the amendment above quoted has been defined in the supreme court of the United States in several cases. Thus, in *U. S.* v. *Cruikshank,* 92 U. S. 542, it was declared by the court, Mr. Justice Miller delivering its opinion, that the fourteenth amendment prohibits a state from depriving any person of life,

liberty, or property without due process of law, or from denying to any person the equal protection of the laws; but this provision does not add anything to the rights of one citizen as against another. It simply furnishes an additional guaranty against any encroachment by the states upon the fundamental rights which belong to every citizen as a member of society. The duty of protecting all its citizens in the enjoyment of an equality of rights was originally assumed by the states, and it still remains there. The only obligation resting upon the United States is to see that the states do not deny the right. This the amendment guaranties, and no more. The power of the national government is limited to the enforcement of this guaranty. So, in *Virginia* v. *Rives*, 100 U. S. 313, it was declared by Mr. Justice Strong "that the provisions of the fourteenth amendment [those above quoted] have reference to state action exclusively, and not to any action of private individuals." So, also, in *U. S.* v. *Cruikshank*, 1 Woods, 316, it was declared by Mr. Justice Bradley, speaking of the same provision of the fourteenth amendment:

"It is a guaranty of protection against the acts of the state government itself. It is a guaranty against the exertion of arbitrary and tyrannical power on the part of the government and legislation of the state, not a guaranty against the commission of individual offences; and the power of congress, whether express or implied, to legislate for the enforcement of such a guaranty does not extend to passage of laws for the suppression of crime within the states. The enforcement of the guaranty does not require or authorize congress to perform the duty that the guaranty itself supposes it to be the duty of the state to perform, and which it requires the state to perform."

Recurring to section 5519 of the Revised Statutes we find that it is directed exclusively against the action of individuals, and not of the states; "if two or more persons in any state or territory conspire or go in disguise upon the highway or premises of another," etc. And the information in this case, which follows the statute, charges an offence against three private individuals. It is, therefore, evident that no warrant can be found in the fourteenth amendment for the passage by congress of section 5519 of the Revised Statutes.

The thirteenth amendment declares that "neither slavery nor involuntary servitude, except as a punishment of crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction. Congress shall have power to enforce this article by appropriate legislation." Does this amendment clothe congress with the authority to pass the section under consideration? It may be conceded that this amendment

gives power to congress, not only to protect the personal freedom of the enfranchised citizens, but to remove from them every badge and restraint of slavery and involuntary servitude.

Congress has by virtue of this amendment declared "that all persons within the jurisdiction of the United States shall have the same right in every state and territory * * * to give evidence * * * as is enjoyed by white persons." Act of May 31, 1870, § 16, (16 St. 144; Rev. St. 1977.) The power of congress to do this has been recognized by at least two of the justices of the supreme court. Mr. Justice Swayne in *U. S.* v. *Rhodes,* 1 Abb. (U. S.) 28, and Mr. Justice Bradley in *U. S.* v. *Cruikshank,* 1 Woods, 308. Conceding, then, that congress had the power by virtue of the thirteenth amendment to confer on the persons enfranchised thereby the same right to testify as is enjoyed by white persons, and to punish the invasion of that right, the question remains, has that power been exercised by appropriate legislation by the passage of section 5519 of the Revised Statutes?

I feel constrained by the authority of the supreme court of the United States to say that it has not.

Under the section referred to, it would be an offence for two or more white persons to conspire, etc., to prevent another white person from enjoying the right and privilege of testifying in a court of justice. It would be an offence for two or more colored persons, enfranchised slaves, to conspire with the same purpose, against a white citizen, or against a colored citizen who had ever been a slave. It is, therefore, perfectly clear that the law is broader than the amendment by which it is attempted to be justified. It covers cases both within and outside of its provisions. The law under which two or more free white men could be punished for conspiring to deprive another free white man of the right to testify, cannot be based on the amendment which prohibits slavery and involuntary servitude.

The thirteenth amendment does not, therefore, authorize the law in question.

Upon this question the case of *U. S.* v. *Reese,* 92 U. S. 214, is in point. In that case the supreme court had under consideration the constitutionality of the third and fourth sections of the act of May 31, 1870, (16 St. 140; Rev. St. §§ 2007, 2008, 5506.)

The third section of this act made it an offence for any judge, inspector, or other officer of election whose duty it was under the circumstances therein stated to receive, count, etc., a vote of any citizen, to wrongfully refuse to receive and count the same; and the fourth section made it an offence for any person, by force, bribery, etc., or

other unlawful means, to hinder or delay, etc., any citizen from doing
any act required to be done to qualify him to vote or from voting at
any election.

The attempt was made to sustain these sections as warranted by
the fifteenth amendment to the constitution of the United States.
But the supreme court held it not to be appropriate legislation under
that amendment. The ground of the decision was that the sections
referred to were broad enough, not only to punish those who hindered
and delayed the enfranchised colored citizen from voting on ac-
count of his race, color, or previous condition of servitude, but also
those who hindred and delayed the free white citizen. The court,
speaking by Mr. Chief Justice Waite, said:

"It would certainly be dangerous if the legislature could not set a net large
enough to catch all possible offenders and leave it to the courts to step inside
and say who could be rightfully detained, and who should be set at large.
This would to some extent substitute the judicial for the legislative depart-
ment of the government. The courts enforce the legislative will when ascer-
tained if within the constitutional grant of power. But if congress steps out-
side of its constitutional limitation and attempts that which is beyond its
reach, the courts are authorized to, and when called upon must, annul its en-
croachments upon the reserved rights of the states and the people. And the
court declared that it could not limit the statute so far as to bring it within
the constitutional power of congress and concluded. We must therefore decide
that congress has not as yet provided by appropriate legislation for the pun-
ishment of the offence charged in the indictment."

This decision is directly in point and shows that the section of the
law upon which the information in this case is based is not warranted
by the thirteenth amendment. It is true that the information alleges
that the defendants conspired against Bolton on account of his race
and color. But the act of congress cannot be helped by the informa-
tion. If the law is without constitutional warrant, no averments of
the pleader can give it vitality. There is only one other clause in the
constitution of the United States which, in the remotest degree, can
be supposed to sustain the section under consideration. I refer to
section 2 of article 4, which declares the citizens of each state should
be entitled to all the privileges and immunities of citizens of the sev
eral states. But this section, like the fourteenth amendment, is di-
rected against state action. Its object was to place the citizens of
each state upon the same footing with citizens of other states to
relieve them from the disabilities of alienage in other states, and
inhibit discriminative legislation against them by other states. *Paul*
v. *Virginia*, 8 Wall. 168. It was never supposed that under it con-

gress could pass a law which would punish any private citizen for an invasion of the rights of his fellow-citizen conferred by the state of which both were residents.

I have, therefore, been unable to find any constitutional authority for the enactment of section 5519 of the Revised Statutes. The decisions of the supreme court above referred to leave no constitutional ground for the act to stand on.

As, therefore, there is no valid law by which the judgment of the district court in this case can be sustained, its judgment must be reversed and the cause remanded with directions to discharge the prisoner.

CONSTITUTIONAL LAW—THIRTEENTH AMENDMENT. Article 13 of the amendments to the constitution of the United States was not intended to afford relief to parties unlawfully deprived of their liberty; its purpose is satisfied when such restraint is rendered illegal.(*a*) The object of this amendment was to deprive both congress and the respective states of the power to reduce any person to the condition of slavery or involuntary servitude, except as a punishment for crime;(*b*) the term servitude having a larger significance than slavery.(*c*) The utmost effect of this amendment is to declare the colored as free as the white race, and to give them nothing more than freedom;(*d*) and is a positive prohibition of slavery.(*e*) That personal servitude was meant is shown by the use of the word "involuntary,"(*f*) which includes an indenture of apprenticeship in violation of state law.(*g*) The second section of this amendment authorizes congress to pass such laws as are appropriate, but not to annul state laws or control their operations;(*h*) and imports nothing more than to uphold the emancipating section and prevent a violation of the liberty of the enfranchised race,(*i*) and any legislation which practically tends to secure the full enjoyment of personal freedom is appropriate.(*j*) So, a law which only permits the same class of persons to testify against a black man in a matter where personal property is concerned, tends to enforce this amendment.(*k*) This amendment does not authorize congress to pass laws for the punishment of offences against persons of the colored race—that belongs to the state government.(*l*)

FOURTEENTH AMENDMENT. The main purpose of the fourteenth amendment was to establish the citizenship of the negro; to secure to the colored race the benefit of the freedom previously accorded to them.(*a*) It does not add anything to the rights of a citizen as against another, but only furnishes

(*a*) People v. Brady, 40 Cal. 198. See In re Parrott, 1 Fed. Rep. 481.

(*b*) People v. Washington, 23 Cal. 658.

(*c*) Slaughter-house Cases, 16 Wall. 69; Matter of Turner, 1 Abb. U. S. 84.

(*d*) Bowlin v. Com. 2 Bush. 5.

(*e*) U. S. v. Cruikshank, 92 U. S. 543; S. C. 1 Woods, 308.

(*f*) Slaughter-house Cases, 16 Wall. 69; Matter of Turner, 1 Abb. U. S. 84.

(*g*) Matter of Turner, 1 Abb. U. S. 84.

(*h*) People v. Brady, 40 Cal. 198.

(*i*) Bowlin v. Com. 2 Bush, 5.

(*j*) People v. Washington, 38 Cal. 658.

(*k*) U. S. v. Rhodes, 1 Abb. U. S. 34; People v. Washington, 38 Cal. 658.

(*l*) U. S. v. Cruikshank, 1 Woods, 308.

(*a*) Slaughter-house Cases, 16 Wall. 36; Frasher v. State, 3 Tex. Ct. App. 267.

a guaranty of protection against the acts of the state government;(*b*) but not a guaranty against the commission of individual offences;(*c*) and has reference to state action exclusively, and not to any act of private individuals.(*d*) It is an inhibition on the states denying to them the power to deprive citizens of the equal protection of the laws, and giving to congress the power to enforce the provision.(*e*)   It applies to all the instrumentalities and agencies employed in the administration of its government, its executive, legislative, and judicial departments, and to the subordinate legislatures or divisions of its counties or cities.(*f*)   By this amendment congress had the right to pass the civil-rights bill, which is constitutional;(*g*) but it can only legislate in protection of the rights of citizens of the United States, as such;(*h*) and it was not intended to transfer the protection of all civil rights to the federal government, nor to bring within the power of congress the entire domain of civil rights heretofore belonging exclusively to the several states.(*i*)   Privileges and immunities as mentioned in this amendment includes such as are derived from or recognized by the constitution,(*j*) and are not identical with those referred to in section 2 of article 4 of the constitution;(*k*) nor does this amendment add to the privileges and immunities existing at the time of its adoption.(*l*)   States may pass laws to regulate the privileges and immunities of its own citizens provided they do not abridge the privileges and immunities of citizens of the United States.(*m*)   So they may pass laws for the protection of the lives, health, and property of their citizens,(*n*) as laws prohibiting miscegenation.(*o*)   So the state may regulate the right to practice a profession, as of the law, or medicine,(*p*) or the right to sell intoxicating liquors,(*q*) or the right of fishery,(*r*) or the right to trial by jury;(*s*) or it may legislate as to the rules of evidence;(*t*) and may exclude Chinese from the right to testify where a white man is a party;(*u*) and for or against negroes, equally with whites, under the civil-rights bill;(*v*) so a state may impose a more severe punishment for adultery or fornication where the parties are of different races,(*w*) or

(*b*) Virginia v. Rives, 100 U. S. 313; U. S. v. Cruikshank, 11 Woods, 316; S. C. 92 U. S. 143; Ward v. Flood, 48 Cal. 36; Van Valkenburg v. Brown, 43 Cal. 43; but see U. S. v. Hall, 13 Int. R. R. 181.

(*c*) U. S. v. Cruikshank, 1 Woods, 316.

(*d*) Virginia v. Rives, 100 U. S. 313. See Wells v. State, 3 Lea, 70.

(*e*) Strander v. West Virginia, 100 U. S. 303.

(*f*) Ah Kow v. Nunan, 5 Sawy. 552.

(*g*) Smith v. Moody, 26 Ind. 307; In re Turner, 1 Abb. U. S. 88; Chase, 157.

(*h*) Cully v. Balt., etc., R. Co. 1 Hughes, 536; U. S. v. Cruikshank, 92 U. S. 560; S. C. 1 Woods, 308.

(*i*) Slaughter-house Cases, 16 Wall. 36; Frasher v. State, 3 Tex. Ct. App. 267.

(*j*) State v. McCann, 21 Ohio St. 198.

(*k*) Slaughter-house Cases, 16 Wall. 71; Live Stock, etc., Ass. v. Crescent City, 1 Abb. U. S. 398; U. S. v. Anthony, 11 Blatchf. 204; See Ex parte Hobbs, 1 Woods, 542.

(*l*) Miner v. Happersett, 21 Wall. 162; Ward v. Flood, 48 Cal. 36 : Frasher v. State, 3 Tex. Ct. App. 267.

(*m*) Slaughter-house Cases, 16 Wall. 36.

(*n*) Slaughter-house Cases, 16 Wall. 36; Thorpe v. Rutland, etc., R. Co. 27 Vt. 149; New York v. Miln, 11 Pet. 102; U. S. v. Cruikshank, 92 U. S. 542; 1 Woods, 308.

(*o*) Walker v. Sauvinet, 92 U. S. 90.   See Frasher v. State, 3 Tex. Ct. App. 262; State v. Gibson, 36 Ind. 389; Ex parte Hobbs, 1 Woods, 537; Goss v. State, 24 Alb. Law J. 118.

(*p*) Bradwell v. State, 16 Wall. 130; U. S. v. Anthony, 11 Blatchf. 201; Mason v. Illinois, 94 U. S. 113; Ex parte Spinney, 10 Nev. 323.

(*q*) Bartemeyer v. Iowa, 18 Wall. 129.

(*r*) McCready v. Virginia, 94 U. S. 391.

(*s*) Walker v. Sauvinet, 92 U. S. 90.

(*t*) People v. Brady, 40 Cal. 188; Duffy v. Holson, 40 Cal. 240.   See State v. Rash, 1 Houst. Cr. C. 271.

(*u*) People v. Brady, 40 Cal. 198; overruling People v. Washington, 36 Cal. 658.

(*v*) People v. Washington, 36 Cal. 658.

(*w*) Ford v. State, 53 Ala. 150; Ellis v. State, 42 Ala. 525; Green v. State, 58 Ala. 190.

may inflict a penalty on a white person for marrying a negro,(*x*) or it may provide for the education of colored children in schools distinct from schools for white children.(*y*) This amendment does not relate to territorial or municipal arrangements, or political subdivisions made for different portions of the state.(*z*)

FIFTEENTH AMENDMENT. This amendment invests citizens of the United States with a new right within the protecting power of congress.(*a*) It takes away the authority of the state to discriminate against citizens of the United States on account of race, color, or previous condition of servitude;(*b*) but the power of the state upon all other grounds, including that of sex, remains intact.(*c*) It does not confer the right of suffrage on any one;(*d*) but its adoption rendered inoperative a provision in the then-existing constitution of a state whereby the right of suffrage was limited to the white race.(*e*) By this amendment all persons born in the United States are citizens thereof and capable of becoming voters, but the provision is not self-executing.(*f*) The provisions of this amendment extend to a statute confining selections of jurors to persons possessing the qualifications of electors.(*g*) And the exclusion of a citizen of African descent from the grand jury and from the petit jury is a violation of their personal rights.(*h*)—[ED.

(*x*) Ex parte Francois, 3 Woods, 367. See Ex parte Kinney, 3 Hughes, 9; Ellis v. State, 42 Ala. 525.

(*y*) Ward v. Flood, 48 Cal. 36; Cory v. Carter, 48 Ind. 327; State v. McCann, 21 Ohio St. 129; U. S. v. Buntin, 10 Fed. Rep. 730, and note, 736.

(*z*) Missouri v. Lewis, 101 U. S. 22.

(*a*) U. S. v. Reese, 92 U. S. 218; U. S. v. Cruikshank, 92 U. S. 542; S. C. 1 Woods, 308.

(*b*) U. S. v. Reese, 92 U. S. 218; U. S. v. Cruikshank, 92 U. S. 542; 1 Woods, 308; U. S. v. Petersburg Judges, 14 Am. L. Reg. 105; Van Valkenburg v. Brown, 43 Cal. 43; Wood v. Fitzgerald, 3 Or. 568.

(*c*) Van Valkenburg v. Brown, 43 Cal. 43.

(*d*) Miner v. Happersett, 21 Wall. 178; U. S. v. Cruikshank, 92 U. S. 555; 1 Woods, 308; U. S. v. Reese, 92 U. S. 214; Anthony v. Haldeman, 7 Kan. 50; Hedgman v. State, 26 Mich. 51; U. S. v. Petersburg Judges, 14 Am. L. Reg. 105.

(*e*) Neal v. Delaware, 103 U. S. 370.

(*f*) Spencer v. Board, 1 McArth. 169. See Seeley v. Knox, 2 Woods, 368.

(*g*) Neal v. Delaware, 103 U. S. 370.

(*h*) Strander v. West Virginia, 100 U. S. 303; Virginia v. Rives, Id. 315; Ex parte Virginia, Id. 339. But as to selection of jurors see In re County Judges, 3 Hughes, 576.